UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JANET INGRASSIA, ET AL. | CIVIL ACTION |
| v. | NO. 06-2565 |
| MARINA DEL RAY, LLC, ET AL. | SECTION "F" |

ORDER AND REASONS

Before the Court is the defendants' motion to dismiss for lack of subject-matter jurisdiction.  For the reasons that follow, the motion is GRANTED.

Background

On May 29, 2005, Janet Ingrassia slipped and fell on a gangplank while exiting the Fun Barge breakwater at Marina del Ray, a 121-acre resort community that borders the Tchefuncte River in Madisonville, Louisiana.  The Fun Barge has a swimming pool, sun-bathing area, bar facilities, and its own restrooms.  The defendants acquired the Fun Barge from a shipyard and converted it to a breakwater by placing pilings through large holes in the Fun Barge to keep it stationery.  The Fun Barge floated up and down with the tide, but was incapable of movement along the river.  The Fun Barge was also attached to an immovable barge, which bordered the shore and was permanently fixed to the river bed.  In addition to serving as a breakwater for boats moored at Marina del Ray and

1

as an entertainment venue, the Fun Barge also serves as a pier with moorings, including electricity and water, for approximately twenty boats.  The Fun Barge has shore-based plumbing and electricity, but does not have crew quarters, lifeboats, or an updated registration with the Coast Guard.

Ingrassia suffered a serious injury to her leg when she fell, requiring surgery.  She and her husband sued the defendants for negligence, invoking this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333.  The defendants move to dismiss the case for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, claiming that the Fun Barge does not constitute a "vessel" for purposes of maritime jurisdiction.  This Court agrees.

I.

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for lack of subject-matter jurisdiction. <u>See  Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough</u>, 354 F.3d 348, 351 (5th Cir. 2003).  A court may find a lack of subject-matter jurisdiction based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." <u>Ramming v. United States</u>, 281 F.3d

158, 161 (5th Cir. 2001).  The party asserting jurisdiction bears the burden of proof on a Rule 12(b)(1) motion to dismiss and must show that jurisdiction exists.  <u>Id.</u> at 161.

II.

The Constitution of the United States confers original jurisdiction over admiralty and maritime matters.  U.S. CONST. art. 3, § 2.  Congress has conferred the same original jurisdiction in the federal district courts.  28 U.S.C. § 1333.  But both the Constitution and Congress are silent regarding the specific criteria for determining whether a case falls within the maritime jurisdiction of the courts.  Generally, the federal courts have defined their own maritime jurisdiction, with guidance from Congress' express creation of specific statutory rights within maritime commerce.  <u>See</u> ROBERT FORCE & MARTIN J. NORRIS, THE LAW OF MARITIME PERSONAL INJURIES § 1.1 (5th ed. 2004)(citing the Limitation of Shipowners' Liability Act, the Ship Mortgage Act, the Death on the High Seas Act, the Suits in Admiralty Act, the Public Vessels Act, and the Outer Continental Shelf Lands Act as examples of federal statutes conferring specific rights of action).

The Supreme Court has noted that historically the "traditional test for admiralty tort jurisdiction asked only whether the tort occurred on navigable waters."  <u>Grubart, Inc. v. Great Lakes Dredge & Dock</u>, 513 U.S. 527, 531 (1995).  While a

3

simple test, the catch was that injury had to be entirely sustained on navigable waters to create the cause of action in admiralty. Id. at 532 (citing The Plymouth, 3 Wall. 20, 34 (1866)). The Supreme Court modified the location-only test over decades, culminating in a mixed rule of situs and nexus: "To invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim, [the plaintiff] must satisfy conditions both of location and of connection with maritime activity." Id. (referencing Sisson v. Ruby, 497 U.S. 358 (1990)).

III.

To satisfy the locality requirement in the case at hand, the plaintiff must show that the accident took place on a vessel in navigable waters. See id. at 534-35; cf. The Admiral Peoples, 295 U.S. 649, 651 (1935)(admiralty jurisdiction "does not extend to injuries caused by a vessel to persons or property on the land"). The Tchefuncte River is indeed a navigable waterway, but the central jurisdictional issue is whether the Fun Barge qualifies as a "vessel." It does not.

In defining the term "vessel" over the last 150 years, courts "seemingly [have applied] one of two standards: one considers whether the primary purpose of the craft is transportation of people or equipment across water; the other merely considers whether the craft is capable of transporting people or equipment across water." Benjamin S. Allums, Note,

Stewart v. Dutra Construction Co.: Defining a Vessel in the Wake of the SUPER SCOOP, 80 Tul. L. Rev. 1467, 1469-70 (2006).  Courts have used either the "purpose" or "capability" standard to define the term "vessel" in various applications of maritime law, most of which have centered on the rights of action allowed by maritime employees against their employers. Compare Blanchard v. Engine & Gas Compressor Services, Inc., 575 F.2d 1140, 1143 (5th Cir. 1978)(concluding that the "purpose and business" of the barges did not qualify as "vessels" under the Jones Act), with McCarthy v. The Bark Peking, 716 F.2d 130, 134 (2d Cir. 1983)(applying the "capability" standard to determine if a museum ship qualified as a vessel under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA)).

Congress defined the term vessel in 1 U.S.C. § 3 to include "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water."  Recently, the Supreme Court simplified the choices and adopted Congress' § 3 "capability" definition of "vessel."  Stewart v. Dutra Constr. Co., 543 U.S. 481, 483-85 (2005).  The Court intended this definition specifically for use in determining the existence of Jones Act and LHWCA claims, and "[i]n so doing ... has ensured that the two acts will be consistent in terminology and ... truly complementary of one another in coverage." Allums, supra, at 1476.  The efforts at consistency do

not stop there; federal district and circuit courts also now recognize a standard definition of "vessel" to determine jurisdiction for general maritime torts.

Strangely, both parties in this case equally rely on Stewart to justify their conflicting positions.  They are both correct, in that the Court's analysis in Stewart provides benchmarks against which to apply the facts in this case to determine if the Fun Barge meets the definition of "vessel" for the purpose of invoking maritime jurisdiction. While Stewart held that the capability of a watercraft being used as a means of transportation on water determined the presence of a "vessel," the Court also distinguished structures that are not considered vessels, and it is here that Stewart is most helpful in this analysis.  Structures that are "fixed," "permanently moored," or that have utility lines including water, electricity, and telephone services running to them are not considered vessels. Stewart, 543 U.S. at 493 (relying on Cope v. Vallette Dry-Dock Co., 119 U.S. 625, 626 (1887) and Evansville & Bowling Green Packet Co. v. Chero Cola Bottling Co., 271 U.S. 19, 22 (1926)).  Watercraft that are "permanently affixed to the shore or resting on the ocean floor" are not considered vessels.  Id.  "Simply put, a watercraft is not 'capable of being used' for maritime transport in any meaningful sense if it has been permanently moored or otherwise rendered practically incapable of transportation or movement." Id. at 494;

see also Holmes v. Atlantic Sounding Co., 437 F.3d 441 (5th Cir. 2006)(adopting the "practical capability" standard in Stewart).

To characterize and describe the Fun Barge, the defendants provide a sworn affidavit and a copy of Marina del Ray's Web site. Both describe the permanency of the Fun Barge: the Fun Barge sits on pilings that are driven into the river bed, making it incapable of moving on the river; the Fun Barge has functioned as a breakwater, protecting boats moored at the dock since the early 1980s; and the Fun Barge has utility lines that running to it from the shore. Based on this characterization, the Fun Barge does not qualify as a vessel under Stewart. It seems silly to think otherwise.

The Ingrassias argue that a vessel cannot lose its capability as a means of transportation. They argue that because the Fun Barge started as a means of transportation, that it should continue to be characterized in this way for the duration of its life. This is metaphysics, not law. They erroneously read Stewart and Holmes to dictate that a structure is a vessel if it has any capability as a means of transportation, regardless of how long the structure has been immobile or how much work it would take to return the structure to its original state as a means of transportation. This is simply not a correct reading of these cases.

V.

The Ingrassias challenge the defendants' sworn affidavit, calling it "self-serving," suggesting that the statements in the affidavit are conclusory and unspecific.  This Court is not persuaded by these accusations.  The Ingrassias bear the burden to show that jurisdiction exists, and they have provided no evidence contradicting the Fun Barge's permanence or suggesting characteristics that would define it as a vessel under <u>Stewart</u>.

This Court finds that the Fun Barge is not a vessel under <u>Stewart</u>.  The alleged negligence was not caused by a vessel in navigable waters.  The second prong of the jurisdictional analysis is not relevant.  This Court does not have original maritime jurisdiction over this case.

Accordingly, the defendants' motion to dismiss for lack of subject-matter jurisdiction is GRANTED.

New Orleans, Louisiana, November 22, 2006.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE